283 N.J. Super. 441 (1995)
662 A.2d 577
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
L.C., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1995.
Decided August 8, 1995.
*443 Before Judges STERN and HUMPHREYS.
S.M. Chris Franzblau argued the cause for appellant (Franzblau Dratch, attorneys; Mr. Franzblau, on the brief).
Sharon B. Ransavage, Hunterdon County Prosecutor, attorney for respondent (James C. Lankford, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant appeals from an "amended order of disposition" finding her in "Contempt of Court" for violating domestic relations restraining orders on two occasions, in violation of N.J.S.A. 2C:29-9. She was sentenced to two concurrent six-month terms of probation, with conditions including community service and "psychiatric/mental health counseling." On this appeal, defendant contends that (1) "the State failed to prove beyond a reasonable doubt that defendant `knowing and purposely' intended to violate the [temporary restraining order (TRO)]" issued on January 6, 1993; (2) a conviction for "verbal expressions of her opinion" about her husband's "paramour" on April 18, 1993, "do not constitute harassment" within the meaning of N.J.S.A. 2C:33-4, and (3) the statute is unconstitutional if the definition of "harassment ... includes verbal expressions of opinion." After a careful review of the record, we affirm one conviction and reverse the other.

I.
It is undisputed that on January 3, 1993, a municipal court judge issued a TRO based upon a domestic violence complaint filed against defendant by her husband. On January 6, 1993, a complaint was filed alleging that defendant violated the TRO, *444 contrary to N.J.S.A. 2C:29-9. The next day, a final restraining order (FRO) was issued by the Chancery Division, and on April 18, 1993, another complaint under N.J.S.A. 2C:29-9 was filed against defendant for violation of the FRO.
At a consolidated bench trial, defendant was found guilty of the charges embodied in both the January 6 and April 18 complaints. She was found not guilty of the charges embodied in a third complaint relating to events which occurred on December 12, 1993. As noted above, defendant was sentenced to serve two concurrent six-month probationary terms.
Defendant and her husband, H., both physicians, were married on July 25, 1983. They have two children, K., who was born in September 1986, and A., who was born in April 1991. Defendant and H. separated in August 1992, at which time H. moved into the condominium complex of J., a nurse who worked at the hospital where H. was employed.
Defendant objected to the children's exposure to the relationship H. had with J. Her objection was voiced on several occasions.
On January 3, 1993, H. signed a complaint under the Prevention of Domestic Violence Act of 1991 (Domestic Violence Act), N.J.S.A. 2C:25-17 et seq., alleging that defendant had been "[h]arassing" J. and him. A municipal court judge issued a TRO that day prohibiting defendant from having "contact" with H. and from "making harassing communications" to J. "and her children."
The pertinent facts regarding the first offense can be summarized as follows. On January 6, 1993 at about eight o'clock p.m., defendant arrived at J.'s home and asked to speak with H.J. told defendant that she could not speak to H. and "closed the door." According to H. and J., defendant rang the doorbell six to ten times, or more, over the next five to ten minutes. J. testified that her children "were very frightened."
Defendant testified that she went to J.'s home to ask H. why he had "curtailed visitation with his daughter that night to spend *445 more time with his girlfriend," and that she left immediately after J. refused to let her speak to H. The complaint was filed by H. the same day, pursuant to N.J.S.A. 2C:29-9, alleging a violation of the TRO.
On January 7, 1993, the FRO was issued, "prohibiting [defendant] from having contact" with H., "except on issues dealing with the children," and from having contact with his parents or J. The FRO also prohibited defendant from making "harassing communications by mail, by phone or in person" to H. and J., and from appearing at the homes or offices of H. and J.
The events resulting in the second conviction occurred on Sunday, April 18, 1993. According to H., at approximately 11:30 a.m., H. was dropping the children off at the "mutually convenient" "prearranged" visitation "exchange site" in a school parking lot. Defendant was there at the time H. arrived, as were "a lot of other people" who were watching a soccer game being played at the school. A. had just turned two-years old, and defendant knew that H. had given him a birthday party the day before. According to H., defendant asked him who was at the party, and when she learned that J. and her children had attended, defendant "began screaming ... in front of a large group of people." H. testified that defendant stated "you let that whore at my son's birthday party? That slut and her children were at my birthday party?" H. testified that defendant continued to scream vulgarities, calling J. a "whore" and "slut," for about "two to three minutes," and that he was "embarrassed because this is the community that I live and work in ... I was mortified for the children that she would carry on like this in front of them."
Defendant did not deny that she used words including "[f]oul mouthed bitch" and "[f], God-damned, whore, pathetic shit" with reference to J. in the presence of defendant's children. She insisted, however, that these words were said in "exchange [for] the same profane words" H. called her.
Defendant testified that, after the incident, she and her children went shopping for items for the birthday party she was giving A. *446 that afternoon. She stated that, as she drove by the "townhome community" where J. and H. lived, a police officer stopped defendant's car. The officer told her that H. was at the police station filing a domestic violence complaint against her and ordered her to follow him to the station. In fact, H. filed the complaint on April 18 under N.J.S.A. 2C:29-9, alleging a violation of the FRO. The officer further testified that defendant had made several voluntary statements to him, including that she had knocked on J.'s door and called her a "whore" when she answered it. J. testified that she called the police when she saw defendant's vehicle in front of her apartment.[1]

II.
At the trial, defendant raised the defense of diminished capacity as to the January 6 incident. Her treating psychiatrist testified that at that time, although she had no specific psychiatric diagnosis, the defendant was "in crisis" from the marital breakup, her husband's conduct, and the restraining order. According to this doctor, defendant did not have "[a] psychiatric disorder in medical terms," although at the time she was under "extreme stress" and "unable to sort out what  sensible and logical procedures and judgments were." The doctor concluded "that she was not able to comprehend that a restraining order was in effect" in January.
The trial judge found that on January 6, defendant "purposely and knowingly" disobeyed the January 3 TRO "by going to [J.'s] home and ringing the doorbell" in an attempt to make contact with H. She found that there was no diminished capacity, because the psychiatrist's definition of diminished capacity  "[a]n inability to reason carefully [and] make [appropriate] judgments"  "had little or no relevance" with respect to the restraints embodied in the *447 TRO.[2]
With regard to the complaint alleging violation of the FRO on April 18, 1993, the judge found that although the words "slut" and "whore" were screamed and were not "per se shocking" to H., "they were uttered by defendant with the intent to embarrass him and that they did cause him embarrassment under the circumstances existing at the parking lot, that is the presence of other people in the community."

III.
As to the first offense, the January 3 TRO prohibited defendant from "having contact" with H. and "from making harassing communications to [J.] and her children." There is sufficient evidence in the record to support the trial judge's findings that defendant knowingly violated the TRO. See State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). Under N.J.S.A. 2C:29-9b, a person is guilty of a disorderly persons offense if he or she "knowingly violates any provision in an order entered under [the Domestic Violence Act]" when, as alleged here, the conduct does not also "constitute a crime or a disorderly persons offense." If the conduct constitutes a crime or a disorderly persons offense, then it is a fourth degree crime.
As already noted, the trial judge also found that the emotional stress defendant was experiencing, even if it detracted from her ability to reason carefully and make sound judgments, did not negate her ability to understand the prohibitions embodied in the TRO and to make a conscious decision to disobey them. Hence, the judge found that defendant acted with the requisite culpability. Sufficient credible evidence in the record also supports that finding. See Johnson, supra, 42 N.J. at 161-62, 199 A.2d 809 (1964). *448 See also State v. Reyes, 140 N.J. 344, 365, 658 A.2d 1218 (1995) (interpreting the law of diminished capacity to require an identifiable disorder). Thus, the record supports the judge's finding, beyond a reasonable doubt, that defendant violated the TRO by committing the prohibited act of contacting H. at J.'s home on January 6, 1993. We therefore affirm that conviction.

IV.
Defendant contends that her conviction for the April 18 violation was contrary to both N.J.S.A. 2C:33-4 and First Amendment guarantees. Although she admits using the words "slut" and "whore" in referring to J., she argues that there was no evidence that either her children or anyone else heard her say the words and, therefore, that there was no basis for H.'s embarrassment since he admitted that the words alone did not shock him. Defendant also contends that the verbal expressions of her opinion were constitutionally protected because she uttered them while in a location where she had a right to be, and that they were not accompanied by any prohibited conduct.
The Domestic Violence Act prohibits "[h]arassment" as defined by the "[h]arassment" statute, N.J.S.A. 2C:33-4. See N.J.S.A. 2C:25-19a(13). N.J.S.A. 2C:33-4 provides that:
Except as provided in subsection d. a person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively course language, or any other manner likely to cause annoyance or alarm;
........
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
[(emphasis added).]
Thus, harassment under the Domestic Violence Act requires a "purpose to harass." See E.K. v. G.K., 241 N.J. Super. 567, 570-71, 575 A.2d 883 (App.Div. 1990) (decided under 1983 statute). See also Murray v. Murray, 267 N.J. Super. 406, 410-11, 631 A.2d 984 *449 (App.Div. 1993) (holding that words alone, without "purposeful alarm or serious annoyance," were insufficient to sustain a domestic violence restraining order for harassment).
We have consistently required a "purpose to harass" as an element of harassment under the Domestic Violence Act.
In D.C. v. T.H., 269 N.J. Super. 458, 635 A.2d 1002 (App.Div. 1994), we reversed a final restraining order issued against a father who made a threat with respect to the mother's boyfriend. We held that the trial judge had not made the required finding that defendant made the statement "for the purpose of harassing plaintiff," and noted that, even if he had, the evidence did not support such a finding because defendant's purpose "was to dissuade plaintiff's boyfriend from inflicting further corporal punishment upon his child," not to harass the plaintiff. Id. at 461-62, 635 A.2d 1002.
Similarly, in Peranio v. Peranio, 280 N.J. Super. 47, 654 A.2d 495 (App.Div. 1995), we recently reversed the issuance of a restraining order in a domestic violence case. There, plaintiff filed a domestic violence complaint against defendant from whom she was separated. The restraining order was issued on the basis of defendant's comment that "I'll bury you," which was addressed to plaintiff after a domestic dispute. Id. at 51-52, 654 A.2d 495. We held that "[i]ntegral to a finding of harassment under N.J.S.A. 2C:33-4(c) is the establishment of the purpose to harass ... along with a course of alarming conduct or repeated acts intended to alarm or seriously annoy another," and that such conduct had not been established. Id. at 55, 654 A.2d 495. We added, however, that even if the trial judge had found these elements, "application of the domestic violence law to it trivialized the plight of true victims of domestic violence and misused the legislative vehicle which was developed to protect them." Id. at 56, 654 A.2d 495. We further noted, as we had earlier in Murray, our concern about abuse of the Domestic Violence Act to obtain a "potential[ly] ... unfair advantage to a matrimonial litigant." Ibid. We recognized that it is commendable to endeavor "to shield ... children from *450 the bickering" which takes place upon separation, but that "the fact of the matter is that the dissolution of a marriage is rarely a happy event." Ibid.
We have also held that N.J.S.A. 2C:33-4 does not proscribe mere speech, use of language, or other forms of expression. See State v. Finance American Corp., 182 N.J. Super. 33, 36-38, 440 A.2d 28 (App.Div. 1981). The First Amendment to the federal Constitution permits regulation of conduct, not mere expression. See State v. Vawter, 136 N.J. 56, 65-67, 642 A.2d 349 (1994) (distinguishing between statutes which attempt to regulate expression itself and statutes which regulate conduct). Vawter concerned the prohibitions embodied in N.J.S.A. 2C:33-10 and -11 relating to discriminatory harassment. See also Horizon Health Center v. Felicissimo, 135 N.J. 126, 638 A.2d 1260 (1994) (concerning anti-abortion protests and picketing); State v. Profaci, 56 N.J. 346, 353, 266 A.2d 579 (1970) (concerning N.J.S.A. 2A:170-29, now repealed); Roe v. Roe, 253 N.J. Super. 418, 429, 601 A.2d 1201 (App.Div. 1992) (dealing with N.J.S.A. 2C:33-4a).
Thus, proscribed speech must be uttered with the specific intention of harassing the listener. A statute may constitutionally prohibit "verbal harassment," but not merely "offensive language." Finance American Corp., supra, 182 N.J. Super. at 36, 440 A.2d 28. See also Vawter, supra, 136 N.J. at 65-67, 642 A.2d 349. Hence, there can be no contempt for violating a restraining order which prohibits "harassment" if based on a mere expression of opinion utilizing offensive language. A restraining order can only prohibit conduct, including a communication under N.J.S.A. 2C:33-4 which has a "purpose to harass." Finance American Corp., supra, 182 N.J. Super. at 41, 440 A.2d 28.
Here, the trial judge found that defendant had violated N.J.S.A. 2C:33-4a, which prohibits "mak[ing] a communication ... in offensively coarse language, or in any other manner likely to cause annoyance or alarm." The judge found that defendant's purpose to harass could be deduced from the circumstances. The judge concluded that defendant should have known that the vulgarities, *451 although not shocking to H. personally, would embarrass H. when spoken in the presence of "other people in the community." Thus, the judge concluded that defendant's purpose in uttering the words must have been to harass H.
While the trial judge made a specific finding of fact that defendant's purpose was to harass, the evidence indicates instead that she was reacting to the information conveyed to her about A.'s birthday party. Her purpose was to express her discontent, and she did so only by verbally expressing her opinion. In any event, we conclude that the mere yelling of the words used on April 18, did not constitute the type of "harassment" under N.J.S.A. 2C:33-4a which was prohibited by the domestic violence restraining order. Defendant was authorized to have contact with H. regarding the children. The order prohibited "harassing communications" incident thereto. The speech used by defendant on April 18 while inappropriate, does not constitute "harassment" under the circumstances within the meaning of the statute as interpreted in light of the important constitutional protections afforded to speech. See Finance American Corp., supra, 182 N.J. Super. at 36, 440 A.2d 28. See also Vawter, supra, 136 N.J. at 67, 642 A.2d 349; Peranio, supra; Murray, supra.
We, therefore, affirm the conviction for the January 6, 1993 offense, but reverse the conviction for the April 18, 1993 complaint. However, we note that a minimum term of probation is one year, even for a domestic violence contempt constituting a disorderly persons offense for which a maximum six month custodial term may be imposed. See N.J.S.A. 2C:25-30; 2C:29-9b; 2C:43-8; 2C:45-2a; State v. Dove, 202 N.J. Super. 540, 495 A.2d 487 (Law Div. 1985). Thus, the six-month term of probation imposed on the January 6, 1993 conviction is illegal.[3] Hence, we direct reconsideration of the sentence imposed. If probation is *452 imposed, it shall be for a minimum legal term. See State v. Eigenmann, 280 N.J. Super. 331, 655 A.2d 452 (App.Div. 1995).
The matter is remanded for a correction of the judgment and further proceedings consistent with this opinion.
NOTES
[1] The trial judge found that the officer was "confused" about what he was told concerning the January 6 and April 18 incidents.
[2] The judge found defendant guilty of a fourth-degree crime, but that was later corrected at sentencing and in the judgment. The prosecutor indicated that the matter had been "downgraded," although the complaint for this matter charged a disorderly persons offense. See also N.J.S.A. 2C:1-4a, b; 2C:25-30.
[3] In light of our disposition, we need not decide if the alleged April violation would constitute a "second ... non-indictable domestic violence contempt offense" requiring a thirty-day custodial sentence. See N.J.S.A. 2C:25-30.