■■■■■■

whether it applies to actions commenced by a union to obtain relief for its members for a violation of 29 *U.S.C.S.* § 207(*o* )).

Affirmed.

■■■■■■

16 A.3d 463

E.M.B., PLAINTIFF–RESPONDENT, v. R.F.B.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 3, 2010—Decided April 19, 2011.

Before Judges SKILLMAN, PARRILLO and ESPINOSA.

*R.F.B.*, appellant pro se.

Respondent has not filed a brief.

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Defendant appeals from a final domestic violence restraining order (FRO) entered against him that was based on harassment. For the reasons that follow, we reverse.

A temporary restraining order was issued against defendant on August 18, 2009. When defendant could not be served with the order because plaintiff had no knowledge of his whereabouts, an indefinite restraining order was issued on August 27, 2009.

A FRO hearing was held on September 17, 2009. Defendant did not appear. At the outset, the court stated that defendant had

been served by telephone with notice to be present and that it was satisfied defendant was voluntarily absent from the proceedings.[1] The evidence provided by plaintiff, defendant's 88–year–old mother, can be summarized as follows:

Defendant, 56 years old, resided with his mother in Somerdale. She filed a domestic violence complaint against him on August 18, 2009. Her stated reasons for doing so were that defendant had stolen her keys to the car, cell phone, bank book, money, and some jewelry. Plaintiff stated that he removed the items from her bedroom. She knew he stole the items because those were her things and she was the only other person who lived there. She testified that defendant thought she should not have the keys to the car; that he wouldn't say why but would just take them and had done so twice before. She also testified that, at one time, defendant had taken her wallet and then mailed it back to her, without the money that had been inside. She described his behavior as "controlling." She stated he had also called her a "senile old bitch." When the court asked if that "would annoy" her, she replied, "It hurt me ... [be]cause I was ... I felt that I was good to him. He had no reason to talk that way to me." She testified that defendant had also stolen little things from her in the past and on one occasion locked her out of the house.

The trial court found that defendant committed an act of domestic violence upon plaintiff, i.e., harassment. Finding plaintiff to be credible, the court made the following findings based upon her testimony:

> I find that when the plaintiff testifies that her son is controlling, ... that he takes personal property that belongs to her from her.
>
> ....
>
> I find that the acts as they are described are harassing acts. I find that plaintiff's testimony as she drops her head and ... when she states with great embarrassment, my son says to me you're a senile old bitch, I find that she's sincere as she

---

[1] The record is insufficient for us to determine whether service was adequate and whether defendant was voluntarily absent. In light of our reversal of the FRO for other reasons, we need not address these issues.

weeps and she says that hurts her, so I find that when the defendant does these things that it is his purpose to annoy or to alarm the plaintiff.

. . . .

I find that the past history she's given this Court, I find that to be credible when she states that the defendant had locked her out of her home. She had to use a neighbor to let her back in her home. . . . I find that she's credible when she says that the defendant has taken things from her in the past. It appears to the Court that the defendant is underestimating his 88 year old mother when he believes that because of her age she may not know where her belongings are or she may not know exactly what it is that she's doing, and I find that my observations of her and her responses to the questions, that she's pretty sharp and she knows exactly what's happening.

The court found the predicate act of harassment had been proven but did not specify what section of *N.J.S.A.* 2C:33–4 was violated. Concluding that a restraining order was "necessary to protect the [plaintiff] from any future acts of domestic violence[,]" *see Silver v. Silver,* 387 *N.J.Super.* 112, 903 *A.*2d 446 (App.Div. 2006), the court entered a FRO. In this appeal, defendant challenges those findings and the entry of the FRO.

In reviewing a decision of a family court, we "defer to the factual findings of the trial court," *New Jersey Div. of Youth and Family Servs. v. E.P.,* 196 *N.J.* 88, 104, 952 *A.*2d 436 (2008), in recognition of the "family courts' special jurisdiction and expertise in family matters. . . ." *New Jersey Div. of Youth and Family Servs. v. M.C. III,* 201 *N.J.* 328, 343, 990 *A.*2d 1097 (2010); *Cesare v. Cesare,* 154 *N.J.* 394, 413, 713 *A.*2d 390 (1998). It is only "when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' " that we will intervene and make our own findings "to ensure that there is not a denial of justice." *E.P., supra,* 196 *N.J.* at 104, 952 *A.*2d 436.

Before a court can conclude that domestic violence occurred and enter a restraining order, it must find that one of the enumerated predicate acts under *N.J.S.A.* 2C:25–19 was committed. *See Silver, supra,* 387 *N.J.Super.* at 125, 903 *A.*2d 446. Here, plaintiff's stated reasons for seeking the FRO were her son's thefts. However, theft is not among the predicate acts enumerated in *N.J.S.A.* 2C:25–19.

The court found that defendant's conduct constituted harassment, an enumerated act under *N.J.S.A.* 2C:25–19. A person is guilty of harassment

if, *with purpose to harass another,* he:

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner *likely to cause annoyance or alarm;* or

\* \* \*

c. Engages in any other course of alarming conduct or of repeatedly committed acts *with purpose to alarm or seriously annoy* such other person.

[*N.J.S.A.* 2C:33–4 (emphasis added).]

Under either section of this statute, a defendant must act with the purpose to harass. Subsection (a) targets specific modes of speech, including the use of "offensively coarse language," and requires that the manner of speech be "likely to cause annoyance or alarm." Subsection (c) requires a course of repeated conduct, motivated by a higher degree of purpose, "to alarm or *seriously* annoy." *Ibid.* (Emphasis added).

Under the facts as found by the court here, the only communication that could arguably support a finding of harassment under subsection (a) occurred when defendant called his mother a "senile old bitch." As the court found, this was understandably upsetting to plaintiff. However, we do not measure the effect of the speech upon the victim; we look to the purpose of the actor in making the communication. *State v. L.C.,* 283 *N.J.Super.* 441, 450, 662 *A.*2d 577 (App.Div.1995), *certif. denied,* 143 *N.J.* 325, 670 *A.*2d 1066 (1996).

The harassment statute was not enacted to "proscribe mere speech, use of language, or other forms of expression." *Ibid.; see also State v. Fin. American Corp.,* 182 *N.J.Super.* 33, 36–38, 440 *A.*2d 28 (App.Div.1981). Because the First Amendment to the United States Constitution "permits regulation of conduct, not mere expression[,]" the speech punished by the harassment statute "must be uttered with the specific intention of harassing the listener." *L.C., supra,* 283 *N.J.Super.* at 450, 662 *A.*2d 577. A restraining order based on harassment cannot be entered "if

based on a mere expression of opinion utilizing offensive language." *Ibid.*

The sparse record is devoid of the context for defendant's comment. Although the court concluded that defendant intended to harass, its observation reveals a different appraisal, that defendant's actions were based upon an erroneous perception of his mother's competence: "the defendant is *underestimating* his 88 year old mother when *he believes that because of her age she may not know* where her belongings are or *she may not know exactly what it is that she's doing* . . . ." (emphasis added). The evidence therefore fails to prove by a preponderance of the evidence that defendant called his mother a "senile old bitch" with the intent to annoy her, in violation of subsection (a).

We next turn to considering the sufficiency of the evidence to support a conclusion that defendant violated *N.J.S.A.* 2C:33–4(c). Even if the thefts described by plaintiff provided the requisite course of conduct, a violation of this subsection requires proof of a purpose "to alarm or seriously annoy." Plaintiff provided no testimony to support a finding that defendant was so motivated. The record does not provide evidence that defendant acted with any purpose in stealing from his mother other than to appropriate her property for his own use.

When determining whether the harassment statute has been violated, "courts must consider the totality of the circumstances," *H.E.S. v. J.C.S.*, 175 *N.J.* 309, 326, 815 *A.*2d 405 (2003); *Cesare, supra*, 154 *N.J.* at 404, 713 *A.*2d 390, in light of the parties' history. *Silver, supra*, 387 *N.J.Super.* at 125, 903 *A.*2d 446. There was no evidence of any prior harassing behavior by defendant. As noted, evidence of thefts does not constitute evidence of a prior history of domestic violence in the absence of proof that the thefts were committed with the requisite intent to harass. Similarly, such prior history is not provided by the statement that defendant locked plaintiff out of the house because the facts and context of that incident are not included in the record. The

evidence therefore failed to support a conclusion that defendant engaged in a course of conduct with the intent to alarm or seriously annoy his mother.

Reversed.