**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5357-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

A.J.,

    Defendant-Appellant.

_____

        Argued May 18, 2017 — Decided  July 12, 2017

        Before Judges Hoffman and O'Connor.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Bergen County, Docket No.
        FO-02-0280-15.

        James D. Addis argued the cause for appellant.

        Elizabeth R. Rebein, Assistant Prosecutor,
        argued the cause for respondent (Gurbir S.
        Grewal,  Bergen County Prosecutor, attorney;
        Ms. Rebein, of counsel and on the brief).

PER CURIAM

    Defendant A.J. appeals from a May 19, 2015 order finding him

guilty of harassment, N.J.S.A. 2C:33-4(c), and contempt, N.J.S.A.

2C:29-9(b), for violating a New York State order of protection.[1] He contends the record lacks sufficient evidence to support either conviction. He further asserts the trial court failed to elicit a knowing, voluntary, and intelligent waiver of his right to counsel. For the reasons that follow, we affirm the contempt conviction and reverse the harassment conviction.

I.

We discern the following facts from the trial record. Following their divorce, defendant and K.O. had a contentious relationship. On June 6, 2014, a judge in New York State entered an order of protection prohibiting defendant from communicating with K.O. or their two children in any manner, including indirectly through third parties. On November 19, 2014, the court entered a temporary order of visitation, modifying the order of protection to allow defendant to communicate with K.O. "by e-mail with respect to the subject children." The modified order also afforded defendant parenting time with the children, allowed him to attend the children's functions, and provided for defendant to pick up and return the children at a police precinct. The visitation

---

[1]  N.J.S.A. 2C:29-9(b)(2) proscribes the purposeful or knowing violation of an order entered under the provisions of the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35, "or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States."

order additionally granted defendant parenting time from 10 a.m. on December 24, until 6 p.m. on December 25, 2014.

Defendant failed to appear at the police precinct at 10 a.m. on December 24, as he mistakenly believed the pickup time was at 6 p.m. According to defendant, "[A]t 1:12 p.m., I received a text from my attorney saying that I missed my pickup[;] it was 10 a.m." Notwithstanding the order of protection, defendant called K.O. Defendant testified, "I was very cordial with her on the phone. She said she would call me back. And then I never heard from her again until later on that afternoon." Defendant then sent K.O. three text messages trying to coordinate an alternative time to pick up the children. When K.O. did not immediately respond to defendant's messages, he sent an additional text message stating, "I don't mean to bother you but it's now over [forty] minutes since I reached out to you, can you please let me know the status. Thank you and sorry for the mix up this morning."

At 6:36 p.m., K.O. sent defendant an email declining his request "to schedule a visitation that deviates from the court-mandated visitation schedule." K.O. did offer to "arrange for an additional phone call tomorrow . . . [i]f you'd be interested in this."

At 6:50 p.m., defendant responded by sending an email addressed to K.O., but inserting "The Problem" between her first and last name. The email stated:

> Once again, you are again in contempt of court and your behavior will once again be brought before the judge in family court. Your actions clearly do not represent the best interest of the children and I pray for you. Based upon the recent remarks presented in court, I thought you would go above and beyond to satisfy the requests of the judge, but apparently, you think and feel that you are above the law. You[r] actions do not hurt me, but they are damaging the well[-]being of the children and again, I pray for you. So telling me that you already have plans (even [though] you are at home) because of the holiday season is erroneous since I was willing and able to meet you at any other location for your convenience.
>
> With that I wish you all the best.

At trial, K.O explained that defendant's email made her feel "[i]ncredibly nervous. He has tried to hold me in contempt of court before." On January 12, 2015, after meeting with her attorney, K.O. went to the local police department and filed complaints for harassment and contempt against defendant.

On March 25, 2015, defendant appeared in court and stated his intention to apply for a public defender. On April 22, 2015, defendant returned to court and advised the judge that his application for a public defender had been denied. At that point,

4

the judge questioned defendant to confirm defendant was making a knowing and voluntary waiver of his right to counsel.

The case proceeded to trial on May 19, 2015, with the State presenting testimony from K.O. and the police officer who took her complaint. Defendant, appearing pro se, testified on his own behalf. At the conclusion of the testimony and summations, the trial judge found defendant guilty of both harassment and contempt. The judge stated that defendant's phone call and text messages to K.O. were solely about the children, there was a reason for those communications. The email, however, was not about the children; it was about defendant's "ex-wife." The judge stated that when defendant referred to his ex-wife as "The Problem," he was "shifting the blame" for his mix-up to her. Because the judge found the email did not constitute a permitted email concerning the children, but instead was a "lecturing" email attempting to shift the blame for defendant's own mistake to his ex-wife, he concluded the email violated the order of protection, as modified. The judge further concluded the email constituted "a criminal offense of harassment[,] [g]iven the history in this case."

## II.

Our review of a Family Part judge's findings is deferential "to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the

witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

The purpose of the Act is to assure victims of domestic violence "the maximum protection from abuse the law can provide." State v. Hoffman, 149 N.J. 564, 584 (1997) (quoting N.J.S.A. 2C:2-18). To establish a disorderly person's contempt of court, the State must prove that defendant "purposely or knowingly" violated a restraining order. N.J.S.A. 2C:29-9(b); State v. L.C., 283 N.J. Super. 441, 447 (App. Div. 1995), certif. denied, 143 N.J. 325 (1996). "[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a restraining order knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). N.J.S.A. 2C:2-2(b)(2) states in relevant part: "A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence."

A person is guilty of harassment if he or she, with the purpose to harass another,

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

Under either section of this statute, a defendant must act with the purpose to harass. Bresocnik v. Gallegos, 367 N.J. Super. 178, 182-83 (App. Div. 2004). Subsection (a) targets specific modes of speech, including communications "at extremely inconvenient hours," and requires that the manner of speech be "likely to cause annoyance or alarm." Hoffman, supra, 149 N.J. at 576 (quoting N.J.S.A. 2C:33-4(a)). Subsection (c) requires a course of repeated conduct, motivated by a higher degree of purpose, "to alarm or seriously annoy." Id. at 580. The harassment statute was not enacted to "proscribe mere speech, use of language, or other forms of expression." L.C., supra, 283 N.J. Super. at 450; see also State v. Fin. Am. Corp., 182 N.J. Super. 33, 36-38 (App. Div. 1981). Rather, since the First Amendment to

the United States Constitution "permits regulation of conduct, not mere expression," the speech punished by the harassment statute "must be uttered with the specific intention of harassing the listener." L.C., supra, 283 N.J. Super. at 450.

Regarding the harassment charge, "[a] finding of a purpose to harass may be inferred from the evidence presented[,]" and "[c]ommon sense and experience may inform that determination." Hoffman, supra, 149 N.J. at 577. Nonetheless, we note that purposeful conduct "is the highest form of [mens rea] contained in our penal code, and the most difficult to establish." State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005). Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result," N.J.S.A. 2C:2-2(b)(1), i.e., to alarm or seriously annoy another person. A person's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

Here, the judge made no specific finding defendant acted with this requisite purpose, nor may we view defendant's words as implicitly embodying a purpose to harass. Accordingly, in the absence of this integral finding, the judge's determination that

8

defendant committed harassment must be reversed.  See <u>Corrente v. Corrente</u>, 281 <u>N.J. Super.</u> 243, 249-50 (App. Div. 1995).

We note, however, that reversal of defendant's harassment conviction does not impact defendant's contempt conviction arising out of the same conduct.  In <u>Hoffman</u>, <u>supra</u>, 149 <u>N.J.</u> at 589, the Court sustained a contempt conviction without a finding of guilt on a related harassment complaint, because the mailing of letters by defendant to the victim constituted contact that was prohibited by the restraining order.  Here, defendant's email to his ex-wife went beyond the proscription of the order of protection, which allowed communications "with respect to the subject children," thus violating the order.

Regarding the contempt conviction, we conclude the record supports the judge's factual findings, and the judge applied the correct legal principles in reaching his ultimate decision. Accordingly, we discern no basis to reverse the contempt conviction.  As for the harassment conviction, we are constrained to reverse, based upon our review of the trial record.

Finally, we briefly address defendant's argument that the trial court failed to elicit a knowing, voluntary, and intelligent waiver of his right to counsel.  Based upon our review of the court's colloquy with defendant on April 22, 2015, four weeks before the trial in this matter, we conclude this argument lacks

sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed in part, and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION