# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1813-17T1

L.M.,

     Plaintiff-Appellant,

v.

D.M.,

     Defendant-Respondent.

_____

Argued November 8, 2018 – Decided November 28, 2018

Before Judges Koblitz and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0772-18.

L.M., appellant, argued the cause pro se.

D.M., respondent, argued the cause pro se.

PER CURIAM

Plaintiff L.M.[1] appeals from the November 2, 2017 dismissal of her complaint and denial of her application for a final restraining order (FRO) under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (the Act).[2] We affirm.

Both parties were represented by counsel at trial. They lived together until April 2017, when they separated. At the time of this incident, they had a six-year-old son and three-year-old daughter. Defendant came to plaintiff's home at her request at about 6:15 a.m. on October 18, 2017, to ready the children for school. An altercation took place between the parties that began as a verbal argument when plaintiff asked defendant to clean up because she was not feeling well.

Plaintiff testified that defendant threatened to "knock [her] head off" and "pushed [her] with both hands," causing her to fall back. She testified that after being pushed, defendant continued to make breakfast. Plaintiff poured a bowl of raw eggs on defendant's head and back. Defendant then threw the egg carton

---

[1] We use initials to identify the parties to preserve the confidentiality of these proceedings. R. 1:38-3(d)(10).

[2] We have disregarded any material provided by plaintiff in her appendix that post-dates the decision under review. Although both parties sought FROs, and the judge denied both, only L.M. appeals.

"across the room." She sought medical attention at an urgent care facility the day of the incident. Regarding past history, plaintiff said defendant choked her in 2009, and restrained her with "martial arts Aketo moves" twenty to twenty-five times during their relationship.

Defendant testified he went to plaintiff's house most mornings to ready the children for school and returned to put them to bed. He admitted to pushing plaintiff on October 18, saying he did so "[b]ecause she was right in my face touching me with her middle fingers and yelling from the bottom of her lungs." He said she took two steps back as a result of the shove. He agreed with plaintiff about the egg-throwing. He admitted he made a fist and said to plaintiff, after she poured eggs on him, "if you touch me one more time, I'm going to knock you down . . . ." He testified they had engaged in "horseplay" in the past and he had once put his hands around her throat in 2009 to "calm things down." Defendant said plaintiff had a history of being verbally abusive toward him.

Citing to Corrente v. Corrente and E.M.B. v. R.F. B.,[3] the trial court found that the behavior complained of by both parties was not so abusive that it caused

---

[3] Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995) ("The domestic violence law was intended to address matters of consequence, not ordinary domestic contretemps such as this."); E.M.B. v. R.F.B., 419 N.J. Super. 177, 183-84 (App. Div. 2011) (holding that an adult son calling his mother a "senile old bitch" was insufficient evidence to sustain an FRO).

3

an immediate danger to either party. The court found plaintiff was not afraid of defendant, and found "defendant substantially more credible than . . . plaintiff." The court stated:

> [D]efendant's questions were far more direct, far more responsive, he gave very, very direct and simple answers to questions. He admitted to a number of things which arguably are against his interest and when he does, that's something the [c]ourt considers.

The court found plaintiff's testimony, in so far as it differed from defendant's version of the facts, such as her testimony that defendant threatened to harm her physically before she poured raw eggs on him, rather than afterwards, "not remotely credible." He found no need to protect either party from the other, finding nothing defendant did to be "a matter of consequence."

When reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We do not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins.

4

Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988).

The Act defines domestic violence by referring to a list of predicate offenses found within the New Jersey Criminal Code. J.D. v. M.D.F., 207 N.J. 458, 473 (2011). "[T]he commission of a predicate act, if the plaintiff meets the definition of a 'victim of domestic violence,' N.J.S.A. 2C:25-19(d), constitutes domestic violence . . . ." Ibid.

Before an FRO is entered, the trial court must make specific findings consistent with our opinion in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Next, the court must determine whether a restraining order is required to protect the party seeking restraints from future acts or threats of violence. Id. at 126-27. "[U]pon a finding of the commission of a predicate act of domestic violence," "[t]he

5

second inquiry . . . is whether the court should enter a restraining order that provides protection for the victim." Ibid. In other words, the mere finding of a predicate act of domestic violence, standing alone, is insufficient to support the issuance of an FRO. Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999). An FRO should only issue after "an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

We defer to the credibility determinations of the trial court, which support its determination that plaintiff did not prove the need for an FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1813-17T1