# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0265-23

M.P.H.,[1]

    Plaintiff-Respondent,

v.

S.M.S.,

    Defendant-Appellant.

_____

> Argued September 16, 2024 – Decided October 11, 2024
>
> Before Judge Susswein and Judge Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FV-10-0144-24.
>
> Lindsay A. McKillop argued the cause for appellant (The Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh, Sierra K. Chandler, and Lindsay A. McKillop, on the briefs).

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Blake W. Rush argued the cause for respondent (Law Office of Blake W. Rush, attorneys; Blake W. Rush and Neil Brazer, of counsel and on the brief).

PER CURIAM

Defendant S.M.S. appeals from the August 24, 2023 final restraining order (FRO) entered against her under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the Family Part judge erred by not providing her due process, finding she committed the predicate act of harassment, determining an FRO was necessary to ensure plaintiff M.P.H.'s future protection, and not appropriately addressing parenting time with the parties' children and school restraints. Our review of the record demonstrates the judge adequately advised defendant of her due process rights and that his FRO findings are sufficiently supported by credible evidence. As the Family Part judge did not address defendant's parenting time and the school restraints, however, we remand for further consideration consistent with this opinion. Accordingly, we affirm in part, reverse in part, and remand.

I.

The parties married in October 2011 and share two minor daughters. Throughout their eleven-year marriage, defendant was a stay-at-home parent for their children. After plaintiff left the Navy, he worked as a plant manager.

2

On August 14, 2023, plaintiff obtained a temporary restraining order (TRO) after filing a domestic violence complaint alleging defendant committed predicate acts of harassment. Plaintiff alleged a course of harassment between July 31 and August 13 and a prior history of domestic violence.

At the FRO trial, plaintiff appeared with counsel and defendant was self-represented. The judge called the parties' case advising he would "read[] a very short notice" to the parties. He began with "I want to advise you of your right to get a lawyer and determine if you[] [are] ready" and relayed the parties had a right to retain counsel. He further advised: "[t]here are serious consequences that could ensue if a final restraining order is entered." Then he stated, an FRO "is permanent," "[y]ou will be prohibited from owning or possessing any weapons, including firearms," there would be a "forfeit[ure] [of] any firearms . . . in your possession, including a firearms [identification] card," "you . . . [may] be permanently removed from the home," and "custody or parenting time" "may be affected." The judge told the parties "[a] violation of a restraining order constitutes contempt, and a second domestic violence contempt offense requires a minimum term of [thirty] days imprisonment," and "geographic restraints" may be imposed for a victim's protection. The judge asked defendant if she was "ready to proceed" or "want[ed] to get a lawyer."

A-0265-23

She advised that she "ha[d] nothing" and would proceed. The judge asked the parties to wait for the case to be recalled for trial.

Upon recalling the case, the judge again asked defendant if she was ready to proceed and inquired if she "want[ed] to get a lawyer." Defendant reiterated she would proceed stating, "I[] [a]m pretty smart. I think I can handle this" and she wanted "a resolution." The judge inquired twice more if defendant wanted to proceed and explained "[i]f we proceed the case is going to be heard today." Defendant responded she wanted to continue.

The parties testified at trial. Plaintiff relayed that on August 13, after returning from work in the afternoon, his daughters were outside, and he asked if they wanted to go to the park. Defendant cursed at him and advised he could not take their children. Plaintiff observed defendant had a vape pen. Believing defendant was intaking "Delta 8 THC," which was legally purchased but had intoxicating effects, plaintiff told defendant not to do "drugs when . . . watching the children" and referenced the parties' prior New Jersey Division of Child Protection and Permanency (Division) investigation. Defendant entered their home with the children and called the police on plaintiff. Police responded and advised defendant to leave the residence and stay at a hotel because plaintiff had informed the officers that a Division directive instructed she should not be alone

4

with the children if under the influence of drugs. At trial, plaintiff testified the Division verbally advised he was "deemed . . . the responsible parent," and defendant was not to supervise their children if "high."

Plaintiff relayed that after defendant left the residence, she sent a text message stating, "I saw your girlfriend at the gas station. She[] [is] very pretty." Defendant also previously sent a text message on August 9 calling plaintiff an "abusive a\*\*hole" and stating "she was going to bring all hell," which he perceived as threatening. Plaintiff stated that during a verbal incident on July 31, defendant screamed at him and threw a metal water bottle toward his head.

Plaintiff also testified to a prior history of domestic violence, which he had recited in the TRO. In February 2022, while defendant was in a rehabilitation facility, she falsely "accus[ed]" him of "molesting [their] children," which prompted the Division to investigate. The Division concluded the allegations were unfounded. Plaintiff obtained a TRO, which he later dismissed. While the TRO was pending, defendant texted plaintiff abusive language, which resulted in a contempt charge against her. Plaintiff had filed for divorce, but the parties reconciled. He thereafter dismissed the TRO and divorce complaint, and the State dismissed the TRO contempt charge. Plaintiff testified defendant had committed another act of domestic violence in May 2020

by throwing a dollhouse at him, striking him and breaking a coffee table. He alleged plaintiff had punched him and struck him in the "back of the head, shoulders, [and] back" between 2016 and 2020. Throughout plaintiff's testimony, defendant interjected her disagreement, and the judge requested multiple times she refrain from interrupting and asked her to be quiet.

Plaintiff testified that after the TRO was granted, defendant called the police seeking a welfare check on the parties' daughters. The judge noted "the existing restraining order does[] [not] say anything about the children." Relaying he feared for his own safety, plaintiff stated he did not "know what she[] [was] going to do next," she had "made . . . false allegation[s] against [him]," and it had been "escalat[ing]." He believed he needed protection through a court restraining order.

In addressing plaintiff's allegations, defendant testified that on the morning of August 13, the parties disagreed over who could leave the house. Defendant went to get coffee, but before she left, plaintiff scared her by banging on the car window. Plaintiff left when she returned home. According to defendant, when plaintiff came home later that day, plaintiff "ma[d]e [her] out to be a bad mother" in front of their daughters. Believing plaintiff was angry, defendant called the police from their home. After the police investigated, they

6

asked defendant to leave the home because plaintiff stated she "was a drug addict."  The judge asked defendant on numerous occasions to address plaintiff's allegation and explain "what happened" as she was not testifying regarding the alleged predicate acts.  Defendant did not address the August 13 text messages but denied throwing the metal water bottle at plaintiff.

Defendant relayed that in 2022, she had contacted domestic violence hotlines.  The judge asked defendant to address the allegations of prior domestic violence in 2022 surrounding her rehabilitation and what occurred between the parties, but she was "not answering [the judge's] questions."  She advised plaintiff was "extremely abusive" and had a drinking problem.  After defendant refused to respond to the judge's repeated requests to address plaintiff's testimony, the judge stated, "Do you want me to grant a restraining order now or do you want me to listen to the rest of your testimony?"  The judge questioned defendant about the dollhouse incident, which she denied occurred.

Plaintiff on redirect denied having a drinking problem, and he stated he had not consumed alcohol in years.  During plaintiff's counsel's cross-examination, defendant admitted that after plaintiff received the 2023 TRO, she called the police to do a wellness check on their daughters because plaintiff would not let her speak with their children.  Defendant also acknowledged the

7

Division's investigation and admitted to refusing to take "a drug test" because "marijuana [wa]s legal."

After hearing the testimony and reviewing the evidence, the judge issued an FRO accompanied by an oral decision. He found plaintiff proved by a preponderance of the evidence the predicate act of harassment and an FRO was necessary for his protection. Addressing credibility, the judge found plaintiff "believable" based on "observ[ations]" and his testimony "reasonable." The judge found defendant lacked credibility because of "her constant interruptions," refusal to "answer[] questions," and "evasive[ness]."

The judge further found defendant's use of marijuana was legal and that profanity and abusive language alone was insufficient to support an FRO. Nevertheless, the judge found cause to issue the FRO when viewing the predicate allegations in light of "the history here" because "it b[ore] on whether or not a restraining order should be granted." He found defendant had the "purpose to harass . . . plaintiff," "did engage in a course of alarming conduct," and plaintiff "[wa]s in immediate danger by virtue of . . . defendant's conduct." The court noted defendant's conduct "displayed . . . in court." During the judge's oral decision, defendant stood up and was asked to be seated, but she repeatedly stated, "arrest me" and cursed at the judge.

A-0265-23

The judge granted plaintiff temporary custody of the parties' children and possession of their residence. He also restrained defendant from returning to their residence and daughters' schools. Further, the judge awarded defendant no parenting time without explanation.

On appeal, defendant argues reversal is warranted because the judge: (1) violated her due process rights by failing to advise her of the rights to counsel and to cross-examine plaintiff, as well as by precluding her objections and full direct testimony; (2) erroneously found she committed the predicate act of harassment under N.J.S.A. 2C:33-4(c) and that plaintiff needed protection from abuse or imminent danger; (3) failed to address defendant's parenting time with the parties' daughters and totally restrained her from their schools; and (4) "pre-judged the trial" demonstrating "disdain" for defendant, which requires "assign[ment] to a different trial judge" if the case is remanded.

II.

Our review of an FRO issued after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div.

9

2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). A trial court's findings are "binding on appeal when supported by adequate, substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

We do not disturb a trial court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J.

240, 254 (2007) (quoting <u>Cesare</u>, 154 N.J. at 412). However, we review de novo a trial judge's legal conclusions. <u>C.C.</u>, 463 N.J. Super. at 429.

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing that are imposed by the statute." <u>J.D.</u>, 207 N.J. at 478 (citation omitted). "[E]nsuring that defendants are not deprived of their due process rights requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the [PDVA]." <u>Id.</u> at 479. Due process requires defendants be given "a meaningful opportunity to defend against a complaint." <u>D.N. v. K.M.</u>, 429 N.J. Super. 592, 606 (App. Div. 2013).

The right to counsel is an important due process right of a defendant in an action under the PDVA. <u>A.A.R. v. J.R.C.</u>, 471 N.J. Super. 584, 588 (App. Div. 2022). While this right does not guarantee the appointment of counsel, it does require "a defendant understand[] that [they have] a right to retain legal counsel and receive a reasonable opportunity to retain an attorney." <u>Ibid.</u> Further, due process requires trial judges to inform "domestic violence defendants, in advance of trial, of the serious consequences should an FRO be entered against them." <u>Ibid.</u> The notice requirements exist because the issuance of an FRO "has serious consequences to the personal and professional lives of those who are

found guilty of what the Legislature has characterized as a serious crime against society." Ibid. (quoting Franklin v. Sloskey, 385 N.J. Super. 534, 541 (App. Div. 2006)); see also N.J.S.A. 2C:25-18. Certain sanctions are automatically imposed upon an FRO's entry, such as fingerprinting, N.J.S.A. 53:1-15, and inclusion in a central registry, N.J.S.A. 2C:25-34. The entry of an FRO will preclude a defendant from "purchasing, owning, possessing or controlling a firearm." N.J.S.A. 2C:25-29(b). Additionally, if a defendant violates a restraining order, such violation "constitutes contempt, and a second or subsequent nonindictable domestic violence contempt offense requires a minimum term of thirty days imprisonment." Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005) (citing N.J.S.A. 2C:25-30). In addition to these mandatory sanctions, the issuing court has the discretion to impose further conditions "impairing a defendant's interest in liberty and freedom in order 'to prevent further abuse.'" A.A.R., 471 N.J. Super. at 588 (quoting Peterson, 374 N.J. Super. at 124).

It is well-recognized the New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA protects victims of domestic violence, which includes, among others, "any person . . . who has been subjected

to domestic violence by a person with whom the victim has a child in common." N.J.S.A. 2C:25-19(d).

The entry of an FRO under the PDVA requires the trial judge to make certain findings pursuant to a two-step analysis delineated in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). The judge is also required to consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into its reasonable person determination." Cesare, 154 N.J. at 403. "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)). Secondly, if a predicate act is proven, the judge must determine whether a restraining order is necessary to protect plaintiff from immediate harm or further acts of abuse. Silver, 387 N.J. Super. at 127. A previous history of domestic violence between the parties is one of seven non-exhaustive factors a court is to consider in evaluating whether a restraining order is necessary to protect

13

plaintiff. See N.J.S.A. 2C:25-29(a)(1); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (finding whether a judge should issue a restraining order depends, in part, on the parties' history of domestic violence).

Harassment, N.J.S.A. 2C:33-4, is a predicate act of domestic violence enumerated under the PDVA, N.J.S.A. 2C:25-19(a)(13). Under N.J.S.A. 2C:33-4(c), a person commits an act of harassment "if, with purpose to harass another, he[] . . . [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person."

To commit harassment, a defendant must "act with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487 (citation omitted). A judge must consider "the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404).

14

## III.

Guided by these principles, we discern no basis to disturb the judge's entry of an FRO against defendant. We reject defendant's argument that the judge violated defendant's due process rights. As an initial matter, we note defendant fails to reference the judge's preliminary instructions to the parties. The record demonstrates the judge communicated the ramifications of an FRO to defendant when the judge first called the matter to determine whether the case was proceeding. Defendant had an opportunity to contemplate the instructions before the trial started. When the case was recalled, the judge again asked defendant if she was ready to proceed and "wanted to get a lawyer." We conclude defendant was amply informed of the consequences of an FRO at the outset and provided a "meaningful basis to decide whether to retain counsel." A.A.R., 471 N.J. Super. at 589.

Defendant's further contentions that she was precluded from cross-examining plaintiff, objecting to his testimony, and fully testifying herself are belied by the record. Prior to any testimony, the judge explained that after plaintiff testified, defendant was permitted to ask him questions. If she had "no questions" and chose "to testify," she could be "question[ed] on cross[-]examination" by plaintiff's counsel. After plaintiff's testimony, the

15

judge asked defendant "[i]f [she had] any questions" and advised "[i]f you do[] [not] have any questions, if you want to testify you can." Thus, the judge sufficiently advised defendant during the proceeding that she had the right to cross-examine plaintiff. Further, regarding defendant's blanket allegation that she was not permitted to object during the trial, the record demonstrates otherwise. For example, after she stated she had an objection to plaintiff's testimony, the judge inquired "[w]hat is your objection" and determined her disagreement with plaintiff's statement was "not [a] basis for an objection." We also conclude the judge did not prevent defendant from fully testifying. The judge on multiple occasions requested defendant address the central domestic violence allegations; thus, the judge provided defendant ample opportunity to expand her testimony.

We next address defendant's contention the judge "failed to [sufficiently] explain" his findings that she committed the predicate act of harassment. The judge found plaintiff credibly established harassment after considering the predicate incidents between July 31 and August 13 against the "relevant history." He found defendant acted "with [a] purpose to harass" and "engage[d] in a course of alarming conduct or repeatedly committed acts" in violation of N.J.S.A. 2C:33-4(c). While each established incident of abusive language or

16

contretemps alone was insufficient in isolation to sustain harassment, the judge found an FRO was warranted when viewing the totality of facts established against the demonstrated domestic violence history. See E.M.B. v. R.F.B., 419 N.J. Super. 177, 183 (App. Div. 2011) ("When determining whether the harassment statute has been violated, 'courts must consider the totality of the circumstances,' in light of the parties' history." (citation omitted) (quoting H.E.S., 175 N.J. at 326)). The judge specifically found defendant "used . . . profanity," called the police, "thr[e]w the water bottle" at plaintiff, and had texted plaintiff she was going "to bring all hell if you keep trying to destroy me."

Regarding a prior history of domestic violence, the judge determined defendant made "false allegations to [the Division]," "threw a dollhouse at [plaintiff]" smashing a glass coffee table, and "physically abuse[d] . . . plaintiff." Recognizing the deference accorded to the judge's credibility determinations, we conclude his findings regarding the predicate act of harassment are sufficiently supported by the record to satisfy the first prong of Silver. See 387 N.J. Super. at 125.

Turning to the second prong of Silver, the judge found plaintiff proved a prior history of domestic violence and noted that defendant's escalating conduct demonstrated plaintiff "[wa]s in immediate danger." Defendant testified he was

17

"terrified . . . of what[] [was] going to happen next." The judge reasoned defendant's harassment and the prior history of domestic violence warranted plaintiff's protection. A review of the credible evidence in the record supports the judge's findings that an FRO was necessary to protect plaintiff from further acts of domestic violence. For these reasons, we discern no reason to disturb the judge's issuance of an FRO against defendant.

Defendant also seeks reversal of the judge's order precluding her parenting time and restraining her from their daughters' schools as the judge failed to consider the children's best interests and that "[n]one of the alleged acts of domestic violence involved . . . the children." While the judge noted the parties have two minor children and the undisputed evidence in the record was that defendant stayed at home caring for the children, in addressing custody and parenting time, the judge only stated plaintiff was "granted temporary custody," defendant was "barred from . . . [their] school[s]," and he was "not granting . . . parenting time."

We have held that the PDVA mandates that a restraining order "'shall protect the safety and well-being of the [victim of domestic violence] and minor children and shall specify the place and frequency of parenting time. Parenting time arrangements shall not compromise any other remedy provided by the court

18

by requiring or encouraging contact' between the parties." Finamore v. Aronson, 382 N.J. Super. 514, 523 (App. Div. 2006) (alteration in original) (quoting N.J.S.A. 2C:25-29(b)(3)); see Chernesky v. Fedorczyk, 346 N.J. Super. 34, 40 (App. Div. 2001) (noting that "familial relationships may be fundamentally altered when a restraining order is in effect"). Further, "[w]hile striking this balance the court must keep sight of the benchmark of the best interest of the child." Finamore, 382 N.J. Super. at 523. The judge's decision lacked specific findings regarding defendant's parenting time. R. 1:7-4(a) (requiring trial courts to make sufficient "find[ings] [of] . . . fact[s] and state [their] conclusions of law").

Given plaintiff contemplated filing a complaint for divorce at the time of the FRO hearing, and time has passed since entry of the order, it may well be that the issues of custody and parenting time have been resolved by a judge or the parties. Accordingly, we remand and direct the trial judge to determine whether the FRO still governs custody and parenting time. If defendant's parenting time and ability to attend the children's school have not been addressed, a plenary hearing will likely be required to render a decision on these issues. We express no view regarding the outcome on remand. A plenary hearing shall be held within forty-five days.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in our written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0265-23