182 N.J. Super. 33 (1981)
440 A.2d 28
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FINANCE AMERICAN CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1981.
Decided December 9, 1981.
*35 Before Judges BISCHOFF, KING and POLOW.
Joseph J. Rodgers argued the cause for appellant (Feinberg & Rodgers, attorneys).
Mary L. Cupo, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, J.A.D.
Defendant appeals from a judgment entered by the Law Division after a trial de novo on the municipal court record *36 finding it guilty of violating N.J.S.A. 2C:33-4(a) because its agent made harassing telephone calls to one of its debtors while she was at work.[1]
N.J.S.A. 2C:33-4 reads in pertinent part as follows:
A person commits a petty disorderly persons offense if, with purpose to harass another, he: a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
We reject defendant's initial contention that the evidence failed to support a finding that the statute was violated. On the evidence presented, the trial judge reasonably could have found that defendant's agent persisted in calling the debtor at her job at Resorts International where she worked as a cashier supervisor. These calls were made after she informed them that she was not permitted to accept calls. One of defendant's employees also directed a racial slur at her and threatened police and Casino Control Commission intervention. From such constant dunning conduct defendant's agent's "purpose to harass" was reasonably deducible. In addition, defendant must be charged with the knowledge that the constant calls, although made during the day, were made at "extremely inconvenient hours" from the debtor's viewpoint, and that the racial epithet was "offensively coarse" or at least "likely to cause annoyance or alarm." Defendant's reliance on State v. Rosenfeld, 62 N.J. 594 (1973), is unavailing. The statute there interpreted attempted to regulate the content of speech, which the court held was permissible only as to words likely to threaten an immediate breach of the peace. N.J.S.A. 2C:33-4, on the other hand, addresses not offensive language but rather verbal harassment which lacks the intent to communicate political, philosophical, social or artistic expression entitled to special constitutional deference.
*37 Defendant also contends that N.J.S.A. 2C:33-4(a) is unconstitutionally overbroad and vague. In the Law Division this argument was summarily rejected. The State disputes defendant's standing to argue overbreadth, reasoning that defendant's theory that the statute will impinge upon protected conduct is so speculative as to defeat standing. Although the State did not raise the standing issue below, we chose to address it because of the constitutional values allegedly at stake.
The leading case is Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), in which the court denied standing to state employees who sought to overturn, on grounds of overbreadth, a state law barring public employees from partisan political activities. The court acknowledged the general rule that a "person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." 413 U.S. at 610, 93 S.Ct. at 2914. But the court noted an exception where the statute is claimed to impair First Amendment freedoms:
... [T]he Court has altered its traditional rules of standing to permit  in the First Amendment area  "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Dombrowski v. Pfister, 380 U.S. [479] 486, 85 S.Ct. 1116 [1120], 14 L.Ed.2d 22 (1965). Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. [Id. at 612, 93 S.Ct. at 2915]
In order to acquire standing to assert an overbreadth claim, defendant must make a "strong showing that the `statute's deterrent effect on legitimate expression is ... real and substantial' [citations omitted] and that the sweep of the legislation will impermissibly hobble the exercise of protected First Amendment rights [citations omitted]." N.J. Chamber of Commerce v. N.J. Elec. Law Enforcem., Comm'n, 82 N.J. 57, 66 (1980), quoting in part from Young v. American Mini Theatres, 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310, 320 (1976). *38 More than allegations of a subjective chill must be made; defendant must claim a specific objective harm, either present or predictable. Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).
We consider it important that N.J.S.A. 2C:33-4 principally proscribes conduct and only incidentally commercial speech in this case. In concluding that the overbreadth claimed by appellants was too insubstantial to confer standing, the court in Broadrick, supra, reasoned as follows:
... [F]acial overbreadth adjudication is an exception to our traditional rules of practice and .. . its function, a limited one at the outset [,] attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" towards conduct and that conduct  even if expressive  falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect  at best a prediction  cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. Alderman v. United States, 394 U.S. 165, 174-175, 89 S.Ct. 961 [966-967], 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. [413 U.S. at 615, 93 S.Ct. at 2917]
Whatever overbreadth may exist, the court added, should be cured "through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." Id. at 615-616, 93 S.Ct. at 2917-18.
As the State argues persuasively, the statute here is preserved by the requirement that the speaker have the specific intention of harassing the listener. Harassing phone calls are not entitled to First Amendment protection. Walker v. Dillard, 523 F.2d 3, 4 (4 Cir.1975), cert. den. 423 U.S. 906, 96 S.Ct. 208, 46 L.Ed.2d 136 (1975). Of course, such calls may not be proscribed in language which sweeps in protected expression as well. Ibid. But for the purposes of determining standing, it is sufficient to note that defendant herein was convicted of conduct falling squarely within the proscription. Thus, it has been said that standing in such cases

*39 ... is reserved for those defendants whose speech is at the fringes of that activity which the statute is designed to regulate. Those defendants whose speech is central to the interests which the statute seeks to protect and is clearly of a type regulated by the statute in question, cannot attack the statute as overbroad. They must demonstrate that the statute is unconstitutional as applied to them. [People v. Weeks, 197 Colo. 175, 591 P.2d 91, 94 (Sup.Ct. 1979); citations omitted]
Defendant herein has posed no examples of protected speech which this statute might chill. Rather, it is content to argue generally that the law reaches protected expression and cites some out-of-state cases holding somewhat similar statutes to be overbroad.[2] But we would have to speculate as to possible excessive extensions of N.J.S.A. 2C:33-4. We prefer, as counselled by Broadrick, to cure any such misapplication on a case-by-case basis. This statute regulates conduct too far removed from pure speech and too closely linked to the State's police power to warrant an overbreadth challenge by one who clearly violated it.
Where similar statutes, requiring a specific intention to harass, have been challenged in other jurisdictions, they have withstood attack for overbreadth. See generally, Annotation, "Validity, Construction, and Application of State Criminal Statute Forbidding Use of Telephone to Annoy or Harass," 95 A.L.R.3d 411, 422-424 (1979). In State v. Anonymous, 34 Conn.Super. 689, 389 A.2d 1270 (Super.Ct.App. 1978), defendant was found guilty of violating a statute declaring a person guilty of harassment when, "with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." The factual basis of the charge was that defendant telephoned complainant at her place of work and levelled insults and threats at her. In rejecting defendant's overbreadth argument, the court recognized that the statute aimed, not at the content *40 of the offending statements but rather at the manner in which they were communicated:
... The overbreadth principle is not violated by the unrestricted scope of the messages which the statute may ban because it is the manner and means employed to communicate them which is the subject of the prohibition rather than their content. The statute is not flawed because a recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as the most scurrilous epithet. The prohibition is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy. That words may be the instrument of annoyance does not insulate such wrongful conduct from criminal liability. [389 A.2d at 1273-1274]
Thus the court rejected defendant's contention, also advanced herein, that only "fighting words" could be proscribed, impliedly acknowledging that the cases approving criminalization of speech only if an immediate breach of the peace would result, did not address that class of statutes aimed at purposeful harassment. Id. at 1274.
Defendant in Anonymous later unsuccessfully sought a federal writ of habeas corpus. In denying the writ the court reaffirmed that the "statute regulates conduct, not mere speech," and opined the argued overbreadth was negated by the specific-intent element of the offense. Gormley v. Conn. State Dept. of Prob. Dir., 632 F.2d 938, 941-942 (2 Cir.1980), cert. den. 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980). Moreover, the court deemed any possible chilling effect to be minor compared with the compelling need of the State to deter the increasing misuse of the telephone to harm others. Id. 636 F.2d at 942.
The specific-intent requirement has similarly been held to preserve other statutes. For example, a provision barring the use of the telephone "for repeated calls, if with intent to annoy, abuse, torment, harass or embarrass," was upheld in von Lusch v. State, 39 Md. App. 517, 387 A.2d 306, 310 (Ct.App. 1978). There the court stated: "Freedom of speech does not encompass the right to abuse the telephone with the specific intent to annoy and to harass the recipient of the call." Ibid. And in States v. Hagen, 27 Ariz. App. 722, 558 P.2d 750, 752-753 (Ct. App. 1976), the court upheld a law prohibiting threatening, *41 obscene, lewd or profane telephone calls, where there is an "intent to terrify, intimidate, threaten, harass, annoy or offend." The Hagen court explained that "[b]y specifying the intent with which the call must be made and the nature of the language prohibited, the statute clearly demonstrates that the prohibited activities find no protection under the First Amendment." 558 P.2d at 753.
We have no difficulty concluding that the victim's privacy interest prevails over any right of commercial expression defendant may enjoy in the circumstances. We also observe that the United States Supreme Court has consistently extended less First Amendment protection to commercial expression than to noncommercial expression. See Metromedia, Inc. v. San Diego, 453 U.S. 490, 505-509, 101 S.Ct. 2882, 2891-93, 69 L.Ed.2d 800, 813-816 (1981).
Defendant also seeks to invalidate the statute on the ground of vagueness, contending that the language used was so imprecise as to give it no notice of the conduct proscribed. Specifically, defendant protests that the terms "extremely inconvenient hours," "offensively coarse language" and "any other manner likely to cause annoyance or alarm" are impermissibly vague. But defendant does not claim any imprecision in the qualifying phrase "with purpose to harass."
We concede that if viewed in isolation, each of the phrases might be deemed vague. But each is modified in N.J.S.A. 2C:33-4(a) by the requirement that there be a purpose to harass. The trial court found that defendant had such a purpose. Moreover, defendant cannot seriously deny, notwithstanding any arguable general vagueness, that the conduct which it engaged in fell squarely within the Statute's proscription. Thus, once defendant's agent learned that the calls were not welcome at work, he must have known that the hours of the calls were "extremely inconvenient" and "likely to cause annoyance." Likewise, defendant must reasonably be charged with knowing that the slur "smart-ass nigger" was "offensively coarse," and *42 that that comment plus the threat of police and Commission intervention were very "likely to cause annoyance or alarm."
Thus we conclude that defendant's agent "received fair warning of the criminality of his own conduct from the statute in question" and defendant may not "attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit." Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). It is a well-settled principle of constitutional law that, "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Ibid.
Affirmed.
NOTES
[1] One Morelli, defendant's employee, was the original defendant. The municipal court judge granted defendant's motion to be substituted for Morelli as defendant. No challenge to vicarious liability is raised by defendant on this appeal.
[2] People v. Klick, 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329 (Sup.Ct. 1977); State v. Keaton, 371 So.2d 86 (Fla.Sup.Ct. 1979); State v. Blair, 287 Or. 519, 601 P.2d 766 (Sup.Ct. 1979).