# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2964-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

R.S.,[1]

    Defendant-Appellant.

_____

> Argued April 1, 2025 – Decided May 13, 2025
>
> Before Judges Smith and Chase.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket Nos. FO-09-0083-22, FO-09-0084-22 and FO-09-0085-22.
>
> Joshua H. Reinitz argued the cause for appellant (Law Offices of Gina Mendola Longarzo, LLC, attorneys; Joshua H. Reinitz, of counsel and on the briefs).

---

[1]  We use initials for the parties to protect the identity of the individual who procured the domestic violence restraining order that defendant, her ex-husband, subsequently violated, and which led to the present case. See N.J.S.A. 2C:25-33; R. 1:38-3(d)(9).

Colleen K. Signorelli, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Colleen K. Signorelli, of counsel and on the brief).

PER CURIAM

After a bench trial, the Family Part found defendant R.S. guilty of three charges of disorderly persons contempt, N.J.S.A. 2C:29-9(b)(2), for violations of a final restraining order ("FRO") and one count of petty-disorderly persons harassment, N.J.S.A. 2C:33-4(a). For the reasons that follow, we affirm the contempt convictions and reverse the harassment conviction.

I.

The record reflects that at the time of these incidents, defendant and his estranged wife, H.S., had been married for eighteen years and were the parents of two minor children. They were going through a contentious divorce and shared custody of the children with parenting time exchanges occurring at the local police department.

In February 2020, H.S. obtained a FRO against defendant issued under the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35. The FRO states that defendant is "prohibited from having any oral, written, personal, electronic, or other forms of communication with" plaintiff except as provided for in an addendum. The addendum bars the parties from texting or

2

communicating any threatening or harassing communication. It also permits text or email "only with regard to the health, safety, and welfare of the children or issues relating to parenting time; pick up or drop off of the children, etc." Lastly, it allows the parties to "promptly notify the other of any illness or other matters or problems affecting the child or children."

The present charges arose from a series of emails and texts defendant sent to H.S. On June 12, 2020, after the custody exchange was made, H.S. was visited by the Division of Child Protection and Permanency ("DCPP") social workers who appeared at her residence to conduct a welfare check on the children. While the workers were at the residence, H.S. received a text message from defendant stating, "I really do believe you are surrounding yourself with the wrong elements which are confusing him instead of helping him deal with separation anxiety . . . . Don't be introducing kids to any male figures." This message is the subject of the first contempt charge.

The second contempt charge arose on September 29, 2020, when H.S. received messages from defendant through the Talking Parents Application, the court approved method of communication between the parties. The message stated, "You drop the kids at the police station. Stop having your boyfriend stalking me and my friend Joanna. You are treading on very dangerous water."

A-2964-23

Six minutes later defendant texted plaintiff, "Your contempt case is lying in the dust for three months." These texts also resulted in a charge for harassment.

The text message that drew the third contempt charge took place on October 6, 2020. The message stated, "It is really very sad to see your focus is more on seeing how to get their kids father arrested on another one of your bogus contempt charges instead of studies or finding him a therapist." In August of 2022, defendant was also charged in a fourth case with contempt and harassment.[2]

Defendant filed two motions to dismiss before trial: a motion to dismiss for violation of his speedy trial rights and a de minimis motion. They were denied by two different judges.

A two-day bench trial occurred in October 2023. Each party testified. The court found H.S. credible. In contrast, defendant, who tried to contextualize the messages to demonstrate why they fit within the bounds of the FRO, was found not credible. Defendant was found guilty of three counts of contempt and one count of harassment. He was then sentenced to an aggregate one year of probation and mandatory fines and penalties. Defendant thereafter filed a

---

[2] These charges were dismissed at trial and are not appealed.

motion to vacate the harassment conviction and a motion for a new trial which were both denied.

On appeal, defendant raises the following contentions for our consideration:

POINT I

THE TRIAL COURT'S DETERMINATION OF GUILT WAS CONTRARY TO BOTH THE WEIGHT OF THE EVIDENCE AND APPLICABLE LAW.

A. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR CONTEMPT UNDER DOCKET FO-09-83-22 12.

B. DEFENDANT'S CONVICTION FOR CONTEMPT ON FO-09-84-22 SHOULD BE VACATED BECAUSE THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.

C. DEFENDANT'S CONVICTION FOR CONTEMPT ON FO-09-85-22 SHOULD BE VACATED BECAUSE THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE AND DEFENDANT DID NOT VIOLATE THE FOUR CORNERS OF THE FINAL RESTRAINING ORDER AND DID NOT CONSTITUTE HARASSMENT.

A-2964-23

POINT II

THE COURT'S ERRORS IN LEAVING THE HARASSMENT CHARGE OFF OF ITS ORDERS DENIED DEFENDANT DUE PROCESS REQUIRING DISMISSAL OF THAT COUNT.

POINT III

THE COURT UTILIZED IMPROPER EVIDENCE IN DENYING DEFENDANT'S MOTION TO DISMISS DUE TO SPEEDY TRIAL ISSUES.

POINT IV

THE TRIAL COURT'S EXCLUSION OF RELEVANT AND MATERIAL EVIDENCE DEPRIVED DEFENDANT OF A FAIR TRIAL.

II.

Our scope of review of the factual findings of a judge sitting without a jury is limited. State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing State v. Johnson, 42 N.J. 146, 161-162 (1964)). Moreover, "[w]e accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). Deference is particularly warranted where "'the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J.

6                                                                      A-2964-23

394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "'sees and observes the witnesses,'" thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

Therefore, our review of a trial judge's finding of guilt in a contempt proceeding is limited to determining "whether the record contains sufficient [credible] evidence to support the judge's conclusion." State v. J.T., 294 N.J. Super. 540, 544 (App. Div. 1996) (citing Johnson, 42 N.J. at 161). It follows that we will not disturb a trial court's factual findings unless convinced "'they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice . . . .'" Rova Farms Resort, Inc. v. Investors Ins., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, we do not defer to the judge's legal conclusions if "'based upon a misunderstanding of the applicable legal principles.'" T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

A-2964-23

A determination by a trial judge whether defendant was deprived of his right to a speedy trial should not be overturned unless the decision is clearly erroneous.  State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009).  We afford deference to the trial court's factual findings as to the assessment and balancing of the Barker[3] factors.  State v. Fulford, 349 N.J. Super. 183, 195 (App. Div. 2002).  Thus, we will reverse only if the decision is shown to be so erroneous that no reasonable analysis could have produced it.

In contrast, evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.  Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (concluding that "[t]he trial court is granted broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature"); see also State v. Koedatich, 112 N.J. 225, 313 (1988) (emphasizing that, in making evidentiary decisions, "the trial court has been entrusted with a wide latitude of judgment [and, as a result, the] trial court's ruling will not be upset unless there has been an abuse of that discretion, i.e., there has been a clear error of judgment" (citation omitted (internal quotation

---

[3]  Barker v. Wingo, 407 U.S. 514, 530 (1972).

A-2964-23

marks omitted))); State v. Brown, 463 N.J Super 33, 51 (App. Div. 2020) (And, as with like determinations also entrusted to the sound discretion of the trial court, "'a reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record.'"  MacKinnon v. MacKinnon, 191 N.J. 240, 253–54 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007))).

## III.

### A.

"Domestic violence is a term of art which defines a pattern of abusive and controlling behavior injurious to its victims." D.C. v. F.R., 286 N.J. Super. 589, 607 (App. Div. 1996) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995)).  'The purpose of the PDVA is to assure victims of domestic violence "'the maximum protection from abuse the law can provide.'"  State v. Hoffman, 149 N.J. 564, 584 (1997) (quoting N.J.S.A. 2C:25-18).

To establish a disorderly persons contempt of court, the State must prove that defendant "purposely or knowingly" violated a restraining order.  N.J.S.A. 2C:29-9(b); State v. L.C., 283 N.J. Super. 441, 447 (App. Div. 1995).  "[T]he evidence must allow at least a reasonable inference that a defendant charged

with violating a restraining order knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). N.J.S.A. 2C:2-2(b)(2) states in relevant part: "A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence."

Because a violation of a restraining order is punishable as a criminal act, a defendant is entitled to the rights of all criminal defendants. We must, therefore, ensure the State has carried its burden of proving the defendant's guilt beyond a reasonable doubt. See N.J.S.A. 2C:1-13(a); State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999).

Applying these principles, we conclude there was sufficient credible evidence in the record to support defendant's three convictions of contempt of the FRO. Defendant's contention that the text and emails were justified under the FRO because they ostensibly concerned the couple's children is without merit. While portions of each communication do refer to the children, they clearly go beyond the permitted scope of the FRO by repeatedly placing H.S.'s character and judgment into question. A party who is subjected to court ordered

10

domestic violence restraints on communication with a victim cannot mask violations of that order by interspersing references to the children.

Based on the credible testimony, the trial court believed these messages were evidence of defendant trying to control H.S. and were defendant's attempts to insert his opinions about her choices. We conclude the record supports the judge's factual findings, and the judge applied the correct legal principles in reaching the ultimate decision. Accordingly, we discern no basis to reverse the contempt convictions.

B.

Defendant also contends his conviction for harassment should be reversed. Specifically, he claims the comment: "Stop having your boyfriend stalking me and my friend Joanna. You are treading on very dangerous water." Followed minutes later by, "Your contempt case is lying in the dust for three months," did not equate to harassment under N.J.S.A. 2C:33-4(a). For the first time on appeal, he also posits that his procedural and substantive due process rights were violated, claiming that he did not know that the harassment charge was still pending and that he was convicted under subsection (a) of the harassment statute but had been charged under subsection (c).

In <u>Hoffman</u>, the Court conducted a thorough analysis of N.J.S.A. 2C:33-4(a). 149 N.J. at 576. The court stated that, to violate subsection (a), the following elements must be met:

> (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.
>
> [<u>Ibid.</u>].

The Court stated that "purpose to harass may be inferred from the evidence presented" and that "[c]ommon sense and experience may inform that determination." <u>Id.</u> at 577. The third prong has proven to be "problematic." <u>Ibid.</u> Under subsection (a), "annoyance means to disturb, irritate, or bother." <u>Id.</u> at 580. The Court held that "[t]he catchall provision of <u>N.J.S.A.</u> 2C:33-4(a) should generally be interpreted to apply to modes of communicative harassment that intrude into an individual's 'legitimate expectation of privacy'" such as communications "sent anonymously, or at an extremely inconvenient hour, or in offensively coarse language, all of which are proscribed by subsection (a)." <u>Id.</u> at 583 (quoting <u>Model Penal Code and Commentaries</u> § 250.4, at 372-374 (Official Draft and Revised Comments 1980)).

The Court stated,

> Thus, in enforcing subsection (a) of the harassment statute, we must focus on the mode of speech employed. That subsection of our statute, like those elsewhere, is "aimed, not at the content of the offending statements but rather at the manner in which they were communicated . . . ." State v. Finance Am. Corp., 182 N.J. Super. 33, 39–40 (App. Div. 1981). Speech that does not invade one's privacy by its anonymity, offensive coarseness, or extreme inconvenience does not lose constitutional protection even when it is annoying. Because subsection (a) has criminalized communications that are made anonymously or in offensively coarse language or at extremely inconvenient hours, we assume that the Legislature did not intend to criminalize communications under subsection (a) that are made in inoffensive language, at convenient hours, or in the communicator's own name.
>
> [Hoffman 149 N.J. at 583-84 (citations reformatted).]

In Hoffman, our Court held that a defendant sending his wife torn up copies of court orders, while he was still in jail and a restraining order was in effect, did not constitute harassment. Id. at 590.

Although the trial court found there was no legitimate reason to send the text other than for the purpose to harass, our discussion does not end there. Here defendant made the statement through the Talking Parents Application. It was in defendant's name, there was no offensive language, and was not made at an inconvenient hour. We cannot conclude that the statements were in any other

manner likely to cause annoyance or alarm.  See Peranio, 280 N.J. Super at 55 (finding that a husband pushing his way into house and threatening "I'll bury you" to wife was not harassment); Corrente v. Corrente, 281 N.J. Super 243, 244-50 (App. Div. 1995) (finding that telephone calls from husband to wife demanding she send money and threatening drastic measures if she did not was not harassment).  As such we are constrained to reverse the harassment conviction.

We note, however, that reversal of defendant's harassment conviction does not impact defendant's contempt conviction arising out of the same conduct.  See Hoffman, 149 N.J. at 589 (sustaining a contempt conviction without a finding of guilt on a related harassment complaint because the mailing of letters by defendant to the victim constituted contact that was prohibited by the restraining order).  Because we reverse the harassment conviction there is no need for us to analyze defendant's procedural and substantive due process allegations regarding this charge.

## C.

Defendant also posits that the right to a speedy trial is well-settled, such a right applies to proceedings involving disorderly persons offenses, and that his speedy trial right was violated in this case.  While we agree with defendant that

the right is well-settled and attaches to disorderly persons offenses, we part ways with his conclusion that his speedy trial right was violated in this case.

"The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment." Tsetsekas, 411 N.J. Super. at 8 (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). "As a matter of fundamental fairness, excessive delay in completing a prosecution may qualify as a violation of a defendant's constitutional right to a speedy trial." Ibid. (citing State v. Farrell, 320 N.J. Super. 425, 445-46 (App. Div. 1999)). Moreover, "'[a] defendant has no duty to bring himself to trial; the State has that duty . . . .'" State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977) (quoting Barker, 407 U.S. at 527).

In determining whether a defendant's constitutional right to a speedy trial has been violated, courts consider the multi-factor balancing test set forth in Barker v. Wingo, which focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice to the defendant. 407 U.S. at 530-31. In State v. Cahill, our Supreme Court reaffirmed the use of the Barker four-

A-2964-23

factor test, holding that analytical paradigm "remains the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial . . . ." 213 N.J. 253, 258 (2013).

Legitimate delays, "however great," will not violate the defendant's right to a speedy trial if it does not specifically prejudice defendant's defense. Doggett v. United States, 505 U.S. 647, 656 (1992). Furthermore, it is well established that longer delays may "be tolerated for serious offenses or complex prosecutions." Cahill, 213 N.J. at 265. Moreover, it bears emphasis that "any delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation." State v. Long, 119 N.J. 439, 470 (1990) (quoting State v. Gallegan, 117 N.J. 345, 355 (1989)).

Here, regarding the first Barker prong, length of delay, the court acknowledged that the delay amounted to close to two years, but that defendant on a whole failed to meet his burden regarding a speedy trial violation. Under the second prong, the court emphasized that defendant had obtained four charges over a period of time, the matter had initially been referred to the grand jury, and defendant had even asked for some postponements. Additionally, the court noted there were over 300 pages of discovery, and the Covid-19 pandemic had caused over a year of delays. Moreover, defendant had filed a de minimis

motion which caused a further delay. As to the third <u>Barker</u> factor of extent to which defendant asserted his right to a speedy trial, the court stated "[t]here was no motion filed with regards to that presentment to the Grand Jury. There was also no motion to dismiss filed with regards to the delay" and faulted defense counsel for only making phone calls to the prosecutor rather than filing a motion with the court. The court also noted there was no demand for a trial until the motion to dismiss was filed. Under the prejudice factor, the judge stated that "nothing before this [c]ourt with regards to an investigation of witnesses that would suggest that an investigation was conducted, that there were witnesses who existed, or that they lost those witnesses as a result of the delay." Because the charges were text or email messages and speculation as to lost body camera footage of the victim, making the complaints were immaterial. Here, based on the circumstances of this case and our deference to the judge's determination, we affirm the court's decision to deny defendant's motion as there was no violation of his speedy trial rights.

D.

Finally, we briefly address defendant's argument that the trial court incorrectly determined that DCPP documents and a court order requiring a psychiatric evaluation of the parties' son was irrelevant and cumulative. Given

17

the deference afforded to a trial judge's evidence determination regarding the relevance of a document, we affirm the trial court's decision to exclude these documents.

First, defendant argues that, because the court order was self-authenticating under Rule 902, the court should have admitted it into evidence. While the order was self-authenticating, defendant's position does not accurately portray why the court excluded it. Evidence offered to impeach a victim-witness's statement and corroborate a defendant's own prior testimony must be relevant, meaning it must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. As we have explained,

> [R]elevancy is really composed of two parts: probative value and materiality. Probative value concerns the tendency of evidence to establish the proposition it is offered to prove. Materiality concerns the relation between the propositions for which the evidence is offered and the issues in the case. A material fact is one which is really in issue in the case.
>
> [State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990) (citations omitted).]

Even relevant evidence may be excluded if cumulative. N.J.R.E. 403(b). "[T]he more attenuated and the less probative the evidence, the more appropriate it is

for a judge to exclude it . . . ."  State v. Medina, 201 N.J. Super. 565, 580 (App. Div. 1985).

Here, the court did not abuse its discretion in determining that the evidence was irrelevant and cumulative.  Defendant had been permitted to testify that "there was already a court order requiring [my son] to see a therapist."  H.S. also testified that she sought the court order to reinstate a therapist whom she alleged defendant had fired, further alleging that defendant "was not concerned about [his son's] mental health."  As both parties had testified to the order, and the court accepted that there was an order, the court did not abuse its discretion by not having the actual order placed into evidence.

Defendant's claim that he also sought to introduce evidence of DCPP filings to impeach the credibility of H.S is belied by the record.  On cross examination, defense counsel asked H.S. if there were unfounded DCPP complaints against defendant.  When the State objected, defense counsel said he would rephrase the question.  Counsel then moved on to question H.S. about filing police reports and never returned to question her about DCPP reports.  As such, this argument is without merit.

Affirmed in part and reversed in part.  We remand to the trial court for entry of an amended judgment of conviction reflecting a not guilty finding on

A-2964-23

N.J.S.A. 2C:33-4, the harassment charge, with penalties to be adjusted accordingly.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division