# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3781-22

A.D.T.,[1]

    Plaintiff-Respondent,

v.

D.P.T.,

    Defendant-Appellant.

_____

       Submitted November 14, 2024 – Decided December 9, 2024

       Before Judges Mawla and Natali.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-2164-23.

       Weinberger Divorce & Family Law Group, LLC, attorneys for appellant (Aleida A. Piccini de Velazquez, on the brief).

       Donnette A. Brown, attorney for respondent.

PER CURIAM

---

[1] We use initials to protect the privacy of the parties. R. 1:38-3(d)(10).

Plaintiff commenced this action, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA), alleging that defendant committed the predicate acts of harassment, N.J.S.A. 2C:33-4, and cyber-harassment, N.J.S.A. 2C:33-4.1, based primarily on defendant's emailing of a compilation of sexually explicit videos of the parties to their mutual employer. At the conclusion of a three-day trial at which the parties provided the only testimony, the trial judge rendered detailed findings of fact and entered a final restraining order (FRO) in plaintiff's favor, concluding defendant committed the predicate act of cyber-harassment and entry of an FRO was necessary "to protect [plaintiff] from further act[s] of abuse."

On appeal, defendant argues "the testimony of the parties and the evidence submitted by [p]laintiff at the trial level was insufficient to support the entry of a[n] FRO, and as such the [t]rial [c]ourt's decision should be reversed." Specifically, defendant contends he "did not commit the predicate act of cyber[-]harassment under N.J.S.A. 2C:33-4.1[,] and a[n] FRO was not necessary to protect [plaintiff] from immediate danger and/or protect her from future acts of domestic violence." Defendant also claims because he was self-represented and chose not to cross-examine plaintiff, her testimony "was not tested" and, therefore, was not credible.

2

We find insufficient merit in these arguments to warrant extended discussion in a written opinion. See R. 2:11-3(e)(1)(E). We add the following comments.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Therefore, we will not disturb a judge's factual findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, 65 N.J. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

Deference is particularly warranted where, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is "because the trial [court] 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). Further, we accord particular

deference to Family Part's fact-finding "[b]ecause of the family courts' special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413.

"It is well settled that to obtain an FRO under the [PDVA], a plaintiff must not only demonstrate defendant has committed a predicate act of domestic violence as defined in N.J.S.A. 2C:25-19(a)(1) to (19), but also that a restraining order is necessary for [their] protection." C.C. v. J.A.H., 463 N.J. Super. 419, 429 (App. Div. 2020); see also Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006). N.J.S.A. 2C:25-19 defines domestic violence under the PDVA as the infliction of one or more of the enumerated predicate acts upon a protected person, and cyber-harassment, N.J.S.A. 2C:33-4.1, is among the listed predicate acts. See N.J.S.A. 2C:25-19(a)(19). The plaintiff must prove defendant committed a predicate act by a preponderance of the evidence. N.J.S.A. 2C:25-29(a); Cesare, 154 N.J. at 401.

As relevant here, N.J.S.A. 2C:33-4.1(a)(1) to (3) provides:

> a. A person commits the crime of cyber-harassment if, while making one or more communications in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person:
>
> > (1) threatens to inflict injury or physical harm to any person or the property of any person;

(2)  knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to [their] person; or

(3)  threatens to commit any crime against the person or the person's property.

"The cyber-harassment statute limits the [regulation] of speech mostly to those communications that threaten to cause physical or emotional harm or damage."  State v. Burkert, 231 N.J. 257, 274 (2017).  In order to determine whether a communication constitutes harassment, a court does "not measure the effect of the speech upon the victim; [it] look[s] to the purpose of the actor in making the communication."  E.M.B. v. R.F.B., 419 N.J. Super. 177, 182 (App. Div. 2011) (citing State v. L.C., 283 N.J. Super. 441, 450 (App. Div. 1995)).  A finding of purpose to harass must be supported by "some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient."  J.D. v. M.D.F., 207 N.J. 458, 487 (2011) (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)).  "A finding of a purpose to harass may be inferred from the evidence presented."  State v. Hoffman, 149 N.J. 564, 577 (1997) (citing State v. McDougald, 120 N.J. 523, 566-67 (1990)).

Upon finding a predicate act of domestic violence occurred, the court next considers if "a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 126-27). Specifically, factors the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; [and]
>
> (6) The existence of a verifiable order of protection from another jurisdiction . . . .
>
> [N.J.S.A. 2C:25-29(a)(1) to (6).]

While "a pattern of abusive and controlling behavior is a classic characteristic of domestic violence," we have recognized a court may grant an FRO "even in the absence of such a pattern where there is 'one sufficiently

A-3781-22

egregious action . . . .'" Silver, 387 N.J. Super. at 128 (quoting Cesare, 154 N.J. at 402).

Applying these principles under our deferential standard of review, we are satisfied the court's findings were "supported by adequate, substantial, credible evidence." Gnall, 222 N.J. at 428. Among other things, the court found the parties engaged in an "on again, off again" intimate relationship since they were nineteen years old. After a final sexual encounter in February 2023, plaintiff suffered a mental breakdown and began "sending extensive . . . [and] rude messages to" defendant. As a result of what he believed to be plaintiff's harassment of him, defendant chose to report plaintiff's behavior to their mutual employer and email a compilation of intimate videos of the parties to their employer's legal counsel, rather than contact the police.

After considering the parties' testimony, the court clearly believed plaintiff's testimony over that of defendant's. In making its findings, the court was well aware of any inconsistencies in plaintiff's testimony and her complaint, but nevertheless found her credible and, on the record, noted she testified clearly and "presented herself appropriately . . . ."

Conversely, the court found defendant's behavior inappropriate at times. For example, the court noted defendant "attempted to talk to the [c]ourt after the

[c]ourt had shut off CourtSmart . . . [defendant] was indicating this was not fair . . . [and he] yelled off the record that he had been given herpes by the plaintiff . . . ."

Additionally, the court also found defendant less credible because his defense that he was "doing what [he] was told to do" by sending the compilation of sexually explicit videos to their mutual employer as evidence of plaintiff's harassment did "not make sense." While the court partially accepted defendant's argument that he reported plaintiff's behavior to their employer in an effort to avoid contacting law enforcement, it found it was "unbelievable to cross that next line and to send the intimate messages and rely upon a defense that [he] was just doing what [he] was told."

Based on the testimony, the court concluded defendant committed the predicate act of cyber-harassment when he:

> made a communication in an online capacity with the purpose to harass [plaintiff],[2] and specifically [the court found] that [defendant] . . . knowingly sent the lewd, indecent, and obscene material about [plaintiff] with the intent to emotionally harm her, and he knew that he would emotionally harm her, and the [c]ourt's finding that to lose her job or to . . . be ridiculed by her co-

---

[2] The parties do not dispute defendant made a "communication[] in an online capacity . . . ." As the court found, and the record reflects, defendant emailed the sexually explicit compilation of videos of the parties to their employer's legal counsel. See N.J.S.A. 2C:33-4.1(a).

workers, and even if it's only counsel for [her employer], . . . it was intended to harm her livelihood, intended to have her viewed in a certain way, and the [c]ourt [found] that that [was] cyber[-]harassment.

. . . .

[Defendant] knew exactly what he was doing when he crossed the line and sent the lewd material, the personal, private, indecent material, to the [parties' mutual employer], and he did it with the intent to have her either lose her livelihood, be . . . viewed in a certain way, and that trickled down to being a component of emotionally harming her, and [the court found] that he . . . committed the act of cyber[-]harassment.

That determination was plainly supported by the record, and we discern no principled reason for second-guessing it.[3]

Additionally, we note the court clearly rejected defendant's argument that he emailed plaintiff's communications to him, including the sexually explicit video compilation, to their employer because legal counsel requested it, and because the videos purportedly represented evidence of plaintiff's harassment and attempt to blackmail him.[4] On this point, the court found:

_____

[3] As plaintiff has not filed a cross-appeal, and we affirm the trial court's conclusion that defendant committed the predicate act of cyber-harassment, we need not, and do not, address the court's conclusion that defendant did not commit the predicate act of harassment under N.J.S.A. 2C:33-4.

[4] We note defendant failed to produce any evidence plaintiff initially sent him the sexually explicit videos as a blackmail attempt.

It is unreasonable to believe that [defendant] didn't intend to harm [plaintiff] in her livelihood by sending [these] videos and was just doing what he was told. That is completely unreasonable because, as [defendant] stated, he knew there was a conduct policy, so he very well knew that he would be impacting her livelihood. He didn't make a police report. He didn't file for a restraining order. He didn't even document it with the police . . . .

After careful examination of the record, we are also satisfied that this same evidence more than amply supported the judge's finding that plaintiff needed an FRO to protect her from further domestic violence. Silver, 387 N.J. at 126-27. Specifically, defendant's act of emailing a compilation of intimate videos of the parties to their mutual employer is sufficiently egregious to warrant an FRO. See Silver, 387 N.J. Super. at 128; see also McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007) ("The act of mailing graphic pornographic pictures to a third-party and implying that they may be sent to the victim's workplace . . . is egregious."). In addition, the court acknowledged plaintiff's testimony that defendant previously committed acts of physical violence and mental abuse against her.

Finally, we reject defendant's argument that the court's "entry of a[n] FRO should be reversed as it was based upon inadequate, and non-credible testimony that was not tested in cross-examination." "Litigants are free to represent

10

themselves if they so choose, but in exercising that choice they must understand that they are required to follow accepted rules of procedure . . . . Such litigants are also presumed to know, and are required to follow, the statutory law of this State." Tuckey v. Harleysville Inc. Co., 236 N.J. Super. 221, 224 (App. Div. 1989). Despite adequate warnings from the court regarding the consequences of proceeding pro se, defendant chose to represent himself. Further, defendant willingly elected not to cross-examine plaintiff. Defendant's informed and voluntary choices are not a basis to overturn the court's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION